This case involves a boundary line dispute. Grace Powell filed a complaint in the Circuit Court of Franklin County against her sister, Essie Lou Evans, and her sister's *Page 724 
husband, Bob Evans. The complaint asked the court to establish the boundary between the adjoining lands of Powell and the Evanses. The court, after hearing evidence presented ore tenus, entered a judgment establishing the disputed boundary line between the parties. Powell appeals. We affirm.
The disputed boundary is located on property which belonged to John J. Cummings, the father of Grace Powell and Essie Lou Evans. Although Mr. Cummings had a will, it was not probated after his death because it was attested by only one witness. Mr. Cummings's widow and six children executed mutual warranty deeds based upon the provisions of the unprobated will. Grace Powell's deed and Essie Lou Evans's deed both contain the following language: "This deed is to effectuate a partition of the estate lands of John J. Cummings voluntarily with the will of John J. Cummings which was invalid due to the absence of a witness . . . but which the parties have agreed to honor by written contract among themselves."
The dispute over the boundary involves the location of the point of beginning of the Evans property, described in the deed to Essie Lou Evans as follows: "Begin at an iron pipe corner monument located at the south end of a former culvert, which no longer exists." This point is also a part of the boundary description in the deed to Powell. The deed descriptions of the parcels are taken from a survey conducted in 1976 for the Cummings estate by Guy Johnson, a licensed surveyor. It is Powell's contention that the deeds describe the true boundary between her property and the Evan's property, and that the trial court erred in establishing a different boundary than is described in the deeds.
By agreement between the parties, the court ordered a survey of the property by Guy Johnson, the same surveyor who had surveyed the property in 1976 for the Cummings estate. Johnson testified that he used the unprobated will of John J. Cummings in preparing the 1976 survey. The will calls for Essie Lou Evans's parcel to begin "at the South end of a culvert." Concerning the location of the point at the south end of a culvert, Johnson testified as follows:
 "Q. . . . The original document you were going by, the point was to be located at the south end of a culvert, was it not? That's a yes or no answer.
"A. Yes, sir.
 "Q. Does your survey, Defendant's Exhibit 2 [1976 survey], locate that culvert?
"A. No, sir.
 "Q. Now, I show you once again, back to Plaintiff's Exhibit I [1985 resurvey], and ask you if you do locate the south end of a culvert on Plaintiff's Exhibit I?
"A. Yes, sir.
 "Q. Now, is there more than one culvert running north and south that you found in the whole area, the disputed area, I'm talking about?
 "A. In 1976, we didn't find any running north and south. In 19[8]5, we found one running north and south.
"Q. But today you only found one?
"A. Today, 1976, we didn't find any.
 "Q. I understand you didn't find it, but that's what the document called for as a call, was it not?
"A. Yes.
 "Q. Now, not having found the south end of a culvert to go by, how did you fix that corner?
 "A. I don't know. It's been 9 years ago, how we arrived at where we put that corner. I don't know whether some of the heirs told us this is where the culvert used to be, or whether we found the largest cottonwood tree and lined up with it, and the pine tree, and set it there. How we arrived at that point I don't know, but we could not find the culvert, because I have stated in my description at a former culvert location. I don't know whether some of the heirs told us that was the former location of it or not.
". . . *Page 725 
 "Q. So because you didn't find it you put [`]which no longer exists[']?
"A. Yes, sir."
In addition to the testimony of the surveyor, Johnson, the court heard other testimony concerning the location of the culvert. In particular, Frank Messer testified that he had prepared the unprobated will for John J. Cummings and that he was familiar with the Cummings property. Messer identified the culvert referred to in the will description, and testified that the culvert existed in 1965 and in 1976, and that the culvert was still there. He further testified as follows:
 "Q. All right, are you saying Guy Johnson's crew has not represented themselves accurately in recreating the deed?
"A. I want to see the description.
 "Q. This is the description on the map marked Defendant's Exhibit 2 [1976 survey].
 "A. Where he says a former culvert no longer exists, whoever wrote that in there, there's never been a culvert nowhere near where he put the stob. . . ."
In the present case, Powell contends that her deed describes the true boundary line. She asserts that she and the Evanses are bound by their deeds, which convey the property based on the first description and map of the property as surveyed in 1976. The trial court, however, is not bound to establish the boundary line according to Powell's contention. As this court said in Ray v. Robinson, 388 So.2d 957, 963 (Ala. 1980):
 "If, on the basis of the pleadings and evidence presented at trial, a trial court is convinced that a controversy exists concerning the location of a boundary line, it is empowered to evaluate the evidence and reach a conclusive determination on the true location of the line; however, in doing so, it shall not be constrained by the pleadings to establish only a boundary line that is requested by either party. To the contrary, the court must proceed to find the true line, whether it is as either party contends. Stansell v. Tharp, [245 Ala. 270, 16 So.2d 857 (1944)] supra; Deese v. Odom, 283 Ala. 420, 219 So.2d 134 (1969)."
Powell also argues that the boundary as established by the trial court in this case amounts to a reformation of the deed. Powell contends that the measure of proof necessary to defeat the legal operation of a deed is strict. As authority to that effect, she cites Popwell v. Greene, 465 So.2d 384 (Ala. 1985), which recognizes that "extrinsic evidence of antecedent or contemporaneous oral or written agreements between a grantor and grantee is generally inadmissible to vary, change, contradict, or defeat the legal operation of a deed." 465 So.2d at 386. However, in Floyd v. Andress, 246 Ala. 301,20 So.2d 331 (1944), a case cited in Popwell, supra, the Court recognized that an action to reform a deed to speak the true intention of the parties is outside the operation of the rule that parol evidence is not admissible to vary the terms of a valid legal instrument.
The general rule in Alabama is that a court may exercise its equitable powers to reform a deed to make it conform to the intention of the parties. Clemons v. Mallett, 445 So.2d 276
(Ala. 1984); Pinson v. Veach, 388 So.2d 964 (Ala. 1980);Clipper v. Gordon, 253 Ala. 428, 44 So.2d 576 (1950). One ground for reformation of a written instrument is mutuality of mistake. Clemons v. Mallett, supra; Original Church of God,Inc. v. Perkins, 292 Ala. 283, 293 So.2d 292 (1974). Regarding mutuality of mistake, this Court in Palmer v. Palmer,390 So.2d 1050, 1053 (Ala. 1980), said: "Although a deed in terms expresses the intention of the parties, if there is a material mistake as to the property to which those terms apply, such as to its identity, situation, boundaries, title, amount, value, and the like, a court of equity may grant appropriate relief."
In the present case, the relief granted by the trial court is appropriate. The evidence before the court shows a mutual mistake concerning the location of the boundary line. As a result of the 1976 survey of the Cummings estate property, the deeds to *Page 726 
Grace Powell and Essie Lou Evans do not describe the boundary between their parcels according to the common intent of Powell and Evans.
The deeds recite that they were given to effectuate the partition of the John J. Cummings estate property according to his will. It is apparent that the purpose of the deeds is to divide the Cummings property in the way Mr. Cummings intended, as set out in his unprobated will. The evidence before the trial court included testimony relative to Mr. Cummings's intentions in dividing his property among his children.
It is indeed unfortunate that the dispute over the boundary line did not arise until some eight and one-half years after the deeds to the property were executed. Nevertheless, Powell is the party who invoked the jurisdiction of the court by instituting an action to have the boundary line established. The trial court proceeded to determine the true boundary. Our review of the record reveals an abundance of evidence to support the boundary as established by the trial court in its decree. The boundary set out in the decree gives effect to Mr. Cummings's intent, which is the basis on which the deeds were executed.
The pleadings in this case sought the establishment of a boundary line. However, in establishing the boundary line according to the evidence presented, the trial court reformed the deeds to reflect the intent of the parties. In establishing a boundary line, our standard of review is stated in Tidwell v.Strickler, 457 So.2d 365, 367-68 (Ala. 1984), as follows:
 "[A] judgment establishing a boundary line between coterminous landowners on evidence submitted ore tenus is presumed correct and need only be supported by credible evidence. If so supported, the trial court's conclusions will not be disturbed on appeal unless plainly erroneous or manifestly unjust. Grooms v. Mitchell, 426 So.2d 820 (Ala. 1983); Evans v. Green, 411 So.2d 788 (Ala. 1982); McGilberry v. Belcher, 347 So.2d 370 (Ala. 1977)."
Stated otherwise, a judgment establishing a boundary will be affirmed if, under any reasonable aspect of the case, the decree is supported by credible evidence. Ray v. Robinson, supra; Kirby v. Jones, 370 So.2d 250 (Ala. 1979). To get reformation of a deed, a party must produce evidence that is clear, convincing, and satisfactory, which proves that the deed does not truly express the intentions of the parties. Clemonsv. Mallett, supra; Pinson v. Veach, supra; Adams v. Adams,346 So.2d 1146 (Ala. 1977).
The standard applicable to reformation cases is that the decision of a trial judge who heard, ore tenus evidence will not be overturned on appeal if it is supported by competent evidence and is not manifestly unjust or plainly and palpably erroneous. Clemons v. Mallett, supra; Dalrymple v. White,402 So.2d 968 (Ala. 1981). We find the trial court's judgment not to be plainly or palpably erroneous, and, further, reviewing the entire record in this case, we find sufficient evidence to support the trial court's decision. We hold that the trial court committed no error in reforming the deed to establish the true boundary of the property of the coterminous landowners. Thus, the trial court's judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.